MILLER-STONE MACHINERY COMPANY ET AL. v.
THOMAS BALFOUR.

Decided February 15, 1901.

**1.—Rescission of Contract—Sale of Mill Machinery with Warranty—Damages—Demurrer.**

In an action to rescind, in the alternative, a contract by which plaintiff purchased certain mill machinery under a warranty that it would work well, a demurrer by the defendant to certain items of damage charged in the petition as the cost of drayage and of placing the machinery in position was properly overruled, since there might have been shown a state of facts that would have authorized a recovery of those items.

**2.—Same—Damages Where Fraud Not Shown and Rescission Denied.**

Where, however, on the trial a rescission of the contract was denied, no fraud on defendant's part being shown, and plaintiff recovered the difference between the cost price of the machinery and its actual value as affected by certain defects, it was error to further allow plaintiff the items of drayage and cost of placing the machinery in position, since these items must have been incurred by the purchaser in any event. See facts under which a rescission was properly denied.

**3.—Practice—Trial Upon Special Issues.**

Where the jury, upon special issues submitted, found the value of the property in a certain sum, and the court, in rendering judgment, found it at a different sum, there was error in the judgment.

Appeal from Grayson. Tried below before Hon. Don A. Bliss.

*E. F. Brown, C. R. Crenshaw,* and *Capps & Canty,* for appellants.

*A. L. Beaty,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was instituted by Thos. Balfour against the Miller-Stone Machinery Company, William Capps, and G. E. White for the rescission of a contract and for damages sustained by a breach thereof.

Plaintiff alleges that on the 16th day of July, 1897, plaintiff and defendant Miller-Stone Machinery Company, entered into a contract whereby plaintiff purchased and defendant agreed to deliver to him in Sherman, Texas, certain machinery (a gin outfit) by August 20, 1897, and represented and warranted that the same would, with proper management, perform well, and that said machinery was of superior quality and manufacture, and would gin from forty to fifty bales of cotton per day, and further represented that said machinery, except the engine and boiler, were manufactured in Birmingham, Ala., and would be shipped from said point, and would be of the Smith manufacture. The consideration was the payment of freight, not over 70 cents per hundred, and $2875, for which he executed and delivered to said defendant his promissory notes set out in defendant's answer. And at the time of the execution and delivery of the notes plaintiff executed a chattel mortgage on said machinery to secure the payment thereof. Plaintiff alleges that

with proper management said machinery failed to perform well and to do the work as warranted. The plaintiff properly notified defendant of the defects, stating as far as he was able the particular defects, and wherein it failed to conform with the warranty, and furnished all the aid and assistance in his power to remedy the defects, and defendant sent its practical engineer to Sherman several times, and made certain changes in the arrangement of said machinery, but failed to make it conform to its warranty, and wholly failed to take said property back and substitute other machinery, and alleged specifically certain defects in the machinery, and on or about October 9, 1897, he declined to pay his first note due, and tendered back the machinery and filed suit. That the machinery contracted to be delivered was worth $4000, and that delivered not more than $1000.

As special damages the following items are alleged: Drayage, $45; cost of placing machinery in the building, arranging and fitting same up according to instructions of defendant, $250.

Plaintiff, as cause of action against Smith Sons Gin and Machinery Co., William Capps, and G. E. White, alleges that as soon as this suit was filed, defendant, Miller-Stone Machinery Company, transferred the note first due to said Smith Sons Gin and Machinery Company, fraudulently and for the purpose of defeating the jurisdiction of this court; that G. E. White is trustee under said deeds of trust, and William Capps substitute trustee and attorney for defendants, Miller-Stone Machinery Company, and Smith Sons Gin and Machinery Company, instituted suit in the County Court of Tarrant County on said note for said Smith Sons Gin and Machinery Company, and at same time advertised the machinery for sale by substitute trustee to pay all notes, and prayed for writ of injunction.

Defendants answered by demurrer, exceptions and general denial, special answer setting up the notes and chattel mortgage and praying for foreclosure and judgment on the notes, also facts for writ of sequestration, and on 2d day of September, 1898, sequestered the machinery and took it into possession of Miller-Stone Machinery Company. The notes, eight in number from date August 4, 1897, aggregated $2875, bearing 10 per cent interest from August 15, 1897, and 10 per cent attorney's fees if placed in the hands of an attorney for collection or sued upon, and stipulated that failure to pay any one matured all.

Defendants also allege that the machinery was in all particulars what it was represented to be, and defendant complied with its contract. And then, under the warranty, written notice must be given, wherein it fails to comply with the warranty and a reasonable time given to remedy the defect; then the purchaser is to render all necessary aid, and if it can not be made to work, and the fault is in the machinery (which fact is to be determined by the practical engineer of defendant), in such case it is to be taken back and new machinery substituted. Defendant denied that there was any defect in the machinery, and charged that if the ma-

chinery did not perform well, it was the result of bad management on the part of plaintiff and his employes.

There was judgment for plaintiff for $949.13 and costs, and the injunction against the collection of the notes was perpetuated.

*Conclusions of Law.*—Appellants complain of the action of the court in overruling their special exception to that part of the petition claiming damages for freight and for drayage and damages for putting the machinery in place in the building. The objection made to these items of damage is that they are remote and speculative. There was no error in overruling this exception. The petition sought a rescission of the contract, and there might have been shown a state of facts that would have authorized a recovery for these items.

The court did not err in overruling the exception to the allegations in the petition in reference to the notice given by plaintiff to the machinery company. The petition alleged that the machinery company acted upon the notice as given, and sent a practical engineer to Sherman to make the necessary changes in the machinery. The case was tried upon special issues. The jury found, among other things, that the plaintiff was unable to make the machinery perform well, upon starting it; whereupon he notified defendant machinery company of this fact; that defendant sent his engineer, who examined it and determined that there were defects in the fan and seed flue. These defects could be repaired at a cost of $50 for the seed flue and $80 for the fan. That the defects could have been remedied in three days, at a loss to plaintiff of $30. That entire pneumatic suction and elevator system, including the fan, could have been put in in about two weeks, at a cost $375.

It was shown in evidence that about the latter part of September there were changes made in the fan and other parts of the elevator system. The jury found that on October 1, 1897, up to the time the machinery was shut down, it performed *tolerably* well. The jury further found that the machinery had it come up to the terms of the contract, would have been worth $3257. That the machinery delivered was worth $2000. That the drayage amounted to $45, and that the cost of placing the machinery was $250.

The court found that the value of the machinery on September 2, 1898, when sequestrated by the company, was $2500. The court declined to rescind the contract, but gave judgment for plaintiff for the difference between the value of the machinery, had it complied with the contract, and the value of the machinery delivered, to wit, $1257, and to this added the cost of putting it in place and of drayage, making $1552, and deducted this sum from the contract price, $2875, and on this difference, $1323, allowed interest at 10 per cent per annum up to September 2, 1898, and added 10 per cent as attorney's fees, making $1612.96, and deducted this amount from the value of the machinery at the time it was sequestered and converted by the company, as found by the court, to wit,

$2500, and for this difference, $887.04, with interest thereon at 6 per cent per annum, gave judgment for plaintiff.

Appellee does not agree with the theory upon which the trial court rendered judgment, but insists that he is entitled to have the contract rescinded, and a judgment for such damages as he sustained in the way of expenditures made on the faith of the contract, and if this is not so, then the judgment should be affirmed.

He has cross-assigned error, in which he presents the above contention, and further insists that upon rescission the court should allow appellee the amounts expended for freight, drayage, placing machinery and the amount expended by him for the construction of a building for the machinery, less the amount the building enhanced the value of the realty.

The question raised by the cross-assignments, logically, is the first in order and will be first disposed of. Did the court err in refusing to rescind the contract?

The machinery was sold upon the following warranty: "Miller-Stone Machinery Company warrants that the machinery above described will, with proper management, perform well. Upon starting it, if the purchasers are unable to make it operate, written notice stating wherein it fails to conform with the warranty is to be given by the purchasers, and a reasonable time allowed to get it and remedy the defects, if any exist. If they are not able to make it operate well (the purchaser rendering necessary and friendly assistance), and the fault is in the machinery, and this is to be determined by our practical engineer, it is to be taken back and another substituted in its stead. But if the purchasers fail to make it perform through improper management or want of skill, the purchasers are to pay all necessary expenses incurred. And the purchasers agree to have a skilled engineer to run it."

The machinery upon being started did not perform well. The purchaser notified the machinery company, and the company sent its engineer to remedy its defects. He determined the defects were in the fan and seed flue, which could have been remedied by the substitution of a new fan and seed flue at an expense of $160.

On September 28, 1897, the plaintiff wrote a letter to the machinery company at Fort Worth, in which he complained of the fan, and called upon the company to put in a new fan at once. A new fan was furnished. No demand was made by the plaintiff on the company to substitute other machinery for that on hand. The jury found that on and after October 1st the machinery performed tolerably well. This suit to rescind was filed October 9th, yet the plaintiff continued to operate the machinery until October 18th. It was not shown that the machinery company was guilty of any fraud in the transaction. We conclude that the plaintiff, under the facts shown, was not entitled to a rescission of the contract. Sedg. on Dam., 8 ed., sec. 759; Wright v. Davenport, 44 Texas, 184; Stark v. Alford, 49 Texas, 275.

Appellant by proper assignments challenges the findings of the court

as to the value of the machinery when sequestrated, and the finding of the jury as to its value when delivered, and the correctness of the judgment rendered.

The court found the value of the machinery on September, 1898, to be $2500. The jury found its value when delivered, in 1897, to be $2000. There is no evidence that it had increased in value from the time it was closed down in October, 1897, and the time it was sequestrated. Common experience, in the absence of testimony, would lead us to believe that machinery of this character would not increase in value by lapse of time. There is no evidence that care was used in the keeping of the machinery.

Counsel for appellee explains that it may be that machinery of this character increased in value between the time it was delivered and the time it was sequestrated. If such be the case it would have been easy to make proof of that fact. It is difficult to reconcile the finding of the jury as to the cost of remedying the defects in the machinery, and their finding that the difference in the value of the machinery contracted for, and that delivered, was $1257. We think it clear that the value placed upon the machinery by the jury was too low, or that found by the court was too large. In either event there is error in the judgment. By reason of the difference in the value of the machinery as found by the court and that found by the jury, the judgment against the machinery company is increased $500.

The next question is, did the court err in allowing a recovery for drayage and putting the machinery in place? The general rule for the measure of damages upon the breach of a contract for the sale of personal property is the difference in value of the machinery contracted for and that actually delivered. Wright v. Davenport and Stark v. Alford, supra; Sedg. on Dam., 8 ed., sec. 762.

Does the record present a state of facts that would take this case out of the general rule? The rescission being refused, the purchaser is entitled to the property, and may recoup against the purchase price his damages. The court allowed a recovery by the purchaser for the difference between the value of the machinery contracted for, and the value of the machinery delivered; also the cost of drayage, $45, and the cost of putting the machinery in place, $250. The last two items must have been incurred by the purchaser in any event. They were not incurred by reason of any defect in the machinery.

There being no fraud proven, we conclude under the facts found by the jury, it was error to allow plaintiff to recover for drayage and for putting the machinery in place.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*